# Exhibit 3

_____

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

| | | |
|---|---|---|
| MIDAMINES SPRL LTD. | ) | **Case No. 14-862** |
| Plaintiffs-Appellants | ) | |
| v. | ) | On Appeal From the USDC NYSD |
| | ) | 12 cv 8089, Hon. Richard J. Sullivan |
| KBC BANK NV | ) | Date of Final Order and Notice of Appeal |
| Defendants-Appellees | ) | Filed: March 19, 2014 |

### MOTION TO DISQUALIFY MR. RICHARD MARTIN AND/OR ORRICK, HERRINGTON, SUTCLIFFE LLP

These proceedings have been undermined by the bad faith of KBC Bank NV and its attorneys, and violation of the rules of professional conduct by Mr. Richard Martin, of the firm of Orrick, Herrington, Sutcliffe, LLP (hereinafter "Orrick") which represents KBC Bank. The conduct of Mr. Martin and Orrick warrants disqualification of this firm for abusive litigation practice, and frivolous legal defenses not warranted by existing law, undertaken to harass and maliciously injure Plaintiffs, and prolong the litigation, and delay and cause expenses, all of which amounts to sanctionable conduct.

### STATEMENT OF THE FACTS

Plaintiffs are holders in due course of two official Bank checks drawn on the Payor bank, KBC Bank New York (Dollar Check for $35,110.73USD) and KBC Bank Brussels (Euro Check for Euro 56,414.72); and the claims here are for payment of the two irrevocable official Bank Checks. Plaintiffs-Appellants, Abbas and Midamines, simply want their money.

New York's Uniform Commercial Code, NY UCC Law, §4-213 and §4-302, imposes strict liability upon the KBC Bank for failure to pay Bank checks and statutory violations.[1] Plaintiffs' funds are being improperly withheld in New York, at KBC Bank New York, and at KBC Brussels. These are official Bank checks, not ordinary checks, and thus are accepted at issuance or presentment, and guaranteed, and irrevocable, and drawn on KBC, and are drawn on sufficient funds, belonging to Abbas and Midamines. In New York, Bank Checks are strictly enforced as a matter of law and public policy. See e.g., *Kaufman v. Chase Manhattan Bank, N.A.*, 370 F. Supp. 276 (1973 S.D.N.Y.). The refusal of the District court to enforce the New York UCC Law, as written, flouts the law, flouts good conscience, and allows KBC Bank to be unjustly enriched, to the detriment and expense of Abbas and Midamines. Equity and good conscience requires restitution and payment. See *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.* 273 F.3d. 509, 519 (2d. Cir. 2001).

---

[1] Defendant, KBC Bank New York, Payor Bank, received the <u>*First Subject Check*</u>: for $35,110.72 USD from the depository bank, and KBC Bank completed the process of posting the item to the account of the drawer (Declaration of Diane Grimmig, Doc. #32), and paid the monies into the account of Plaintiff, Midamines Sprl Ltd., at the PNC bank. The check progressed to "final payment" under the statute, *N .Y. U.C.C. Law § 4-213(c)*, and thus accountability for KBC Bank New York. Accordingly, defendant KBC Bank is liable for the face amount of the check. Some weeks after the item had been deposited and paid, KBC Bank illegally went into Midamines Sprl Ltd.'s account and withdrew the monies without authorization and contrary to law. See e.g., *H. Schultz & Sons, Inc. v. Bank of Suffolk Cty.*, 439 F. Supp. 1137 (1977), Payor bank held accountable for the check amount as final payment had been made under UCC §4-213(1)(c). Defendant, KBC Bank, the Payor bank, received the <u>*Second Subject Check*</u>: for 56,414.73 Euro from the depository bank, and failed to pay, and violated the "midnight deadline" rule, and did not act on it within the time required by *N.Y. U.C.C. Law § 4-302* (Declaration of Jan Berkers - Doc. #31). The delay makes KBC Bank liable for the face amount of the check, and the delay was also tantamount to final payment of the check. See e.g., *A.K.S. Jewelery Manufacturing Corp. v. Doras Distributor and The Chase Manhattan Bank, N.A.,* 210 A.D. 2d 35, 619 N.Y.S.2d 270 (1994)(UCC liability as to §4-302).

Liability is imposed on KBC whether the Bank checks are characterized as "teller's checks" or "cashiers' checks" – they are treated as cash – and the result is the same. KBC Bank is liable for payment of the face amount of the checks plus applicable interest. See *Moon over the Mountain v. Marine Midland Bank,* 87 Misc. 2d 918 (1976) which involved a motion for summary judgment *in lieu* of complaint, and the bank was held liable for payment under the accelerated procedures of CPLR §3213.

Antwerp Diamond Bank ("ADB") is the drawer of the Bank checks, and both **ADB and ADB's "forum selection clause" have completely dropped out of this case**. The Plaintiffs do not proceed against ADB, nor with Counts III, IV, V – which are not part of the appeal. Only one defendant remains on appeal, the KBC Bank, and only two causes of action remain. *Count I* - for KBC's failure to pay the bank checks and the N.Y. U.C.C. Law statutory violations by KBC; and *Count II* – for the unjust enrichment of KBC Bank. None of the Plaintiffs-Appellants in the United States had any relationship or contract or account with KBC. There never was any banking "clauses" with KBC. There never was any "forum selection" clauses signed by/with KBC - and nothing signed by Hassan Abbas or Midamines Sprl Ltd. with defendant KBC Bank.

KBC Bank and Abbas and Midamines, are all "non-signatories" and no "forum selection clause" exists as to them.[2] There is a strong connection to New York because it is the site of the property (Plaintiffs' money). It is the site of the UCC violations by KBC, and site of the torts of conversion and unjust enrichment by KBC. Plaintiffs, who deposited the Bank checks in New York, to the PNC and Citibank accounts of the Illinois corp., Midamines Sprl Ltd., are legally entitled to payment upon demand, and this fulfills the purpose for which the Bank Checks were drawn. KBC must pay Plaintiffs' money, finally, so that law, justice and equity may triumph.

---

[2] There is no "injunction" against KBC Bank whatsoever from anywhere in the world, and none that apply to KBC. *See* Declaration of Joost Verlinden, Doc.#34 at p. 7, §18. Mr. Verlinden is the KBC's own legal expert, and he concedes no injunction applies to KBC. As to ADB, the Antwerp injunction has been released (it expired in 2012). See Declaration Verlinden, p. 10, at §31-32. The "injunction-excuse" for non-payment is gone. KBC is desperately looking to manufacture an excuse for nonpayment and talks about an irrelevant "judgment" in Congo, which the US court cannot "judicially notice" for the "truth" of the matter asserted. *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc*., 969 F.2d 1384, 1388 (2d. Cir. 1992). Plaintiffs provided to KBC documents showing the "judgment" has been frozen and suspended, and cannot be executed anywhere in the world. The district court did not explain in its entire opinion - that there is no reason for any "stop order" at present. The district court did not provide any justification or reason for the nonpayment of the checks by KBC. There is no legitimate reason for KBC Bank to improperly withhold Plaintiffs' monies. Mr. Martin knows, and KBC knows that their legal position is frivolous. KBC has no reason not to fully conform her conduct to the law. KBC must pay Bank checks.

## REASONS FOR GRANTING THE MOTION TO DISQUALIFY

Plaintiffs-Appellants respectfully move for the disqualification of the firm of Orrick, Herrington, Sutcliffe, LLP (hereinafter "Orrick") from representing KBC Bank based on the facts, the law, and the Orrick lawyers' violations of the rules of professional conduct:

**1.  New York Rules of Professional Conduct - Rule 4.4**

On May 22, 2014, I received an inadvertent email from Mr. Richard Martin of the firm of Orrick Herrington Sutcliffe LLP, sent from the email rmartin@orrick.com to the following recipients in the email: habbas@handlerthayer.com, ha.law@hotmail.be, nraj@orrick.com, HGredd@LSWLAW.com, sptlaw@sbcglobal.net, and to pgarlinger@lswlaw.com.[3]  Thereafter, on the same day, Mr. Martin sent another email claiming it was inadvertent and privileged.

---

[3] New York Rules of Professional Conduct, Rule 4.4 - only imposes a minimal requirement of notification upon the lawyer receiving an email which the sender claims is "inadvertent" or "privileged". I rejected the claim of "privilege" or "confidentiality" because the email: (a) contains no attorney-client confidential communications (i.e. between KBC and Orrick); and (b) contains no privileged documents attached; and (c) the email was intentionally sent to third parties outside the Orrick firm, and any claim of privilege was voluntarily waived and/or destroyed.  Disclosure to third parties waives any privilege.

An attorney-client relationship arises only when one contacts an attorney in his capacity as such for the purpose of obtaining legal advice or services. (CPLR 4503, subd [a]; see, e.g., *People v Belge*, 59 A.D.2d 307, 309; *United States v United Shoe Mach. Corp.*, 89 F. Supp. 357, 358-359, *supra*; 8 Wigmore, § 2292.). Not all communications to an attorney are privileged. In order to make a valid claim of privilege, it must be shown that the information sought to be protected from disclosure was a "confidential communication" made to the attorney for the purpose of obtaining legal advice or services. (*Matter of Jacqueline F.*, 47 N.Y.2d 215, 219, *supra*; *People ex rel. Vogelstein v Warden of County Jail of County of N. Y.*, 150 Misc. 714, 717-718; 8 Wigmore, § 2292.).  The burden of proving each element of the privilege rests upon the party asserting it. (*Matter of Gavin*, 39 A.D.2d 626, 628; *Matter of Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 474.).  Even where the technical requirements of the privilege are satisfied, it may, nonetheless, yield in a proper case, where strong public policy requires disclosure. (*Matter of Jacqueline F.*, 47 N.Y.2d 215, *supra*; *People ex rel. Vogelstein v Warden of County Jail of County of N. Y.*, 150 Misc. 714, *supra*.).  It is Orrick's burden to show that the privilege exists, and was not waived.  *John Blair Communications, Inc. v Reliance Cap. Group*, L.P., 182 AD2d 578 [1st Dept 1992]); *Manufacturers and Traders Trust Co. v Servotronics,* Inc., 132 AD2d 392 [4th Dept 1987]).[FN7] [*13].

On May 23, 2014, I responded and notified Mr. Martin that I would file a motion to disqualify him and his firm in light of the content of the email.  On May 28, 2014, pursuant to Rule 4.4(b), I formally notified Orrick of receipt, and that we rejected the claim to "privilege" because it had been waived by Mr. Martin's voluntary disclosure to third parties not within his law firm, and because the email contained no confidential communications, and the email had no privileged documents, and that we intended to make use of the email, which demonstrated that Mr. Martin and Orrick were knowingly pursuing a frivolous legal position on behalf of KBC.[4]

In my professional judgment the email is not privileged, and demonstrates the Orrick law firm is engaged in abusive litigation practice, and non-meritorious assertions, warranting disqualification.

## 2. <u>Abusive Litigation Practice – Violation of NY DR 7-102 A(1)</u>

Mr. Martin and Orrick are knowingly taking a frivolous legal position that serves merely to harass and maliciously injure, cause delay, and increase expenses to the Plaintiffs.



, and thus he fails to abide by the rules, by continuing to rely on the district court's erroneous decision, mistakenly citing *Horvath*, in order to justify dismissal of KBC, , and fails to elucidate to KBC that UCC law imposes strict liability on KBC.

---

[4] The relevant Comments to Rule 4.4 state for example, [1] Responsibility to a client requires a lawyer to subordinate the interests of others to those of the client, .. [2] …this Rule does not require that the lawyer refrain from reading or continuing to read the document,.. [3] … Because there are circumstances where a lawyer's ethical obligations should not bar use of information obtained from an inadvertently sent document, .. and .. **this Rule does not subject a lawyer to professional discipline for reading and using that information**.  Accordingly, in deciding whether to retain or use an inadvertently received document, some lawyers may take into account whether the attorney-client privilege will attach.  But if applicable law or rules do not address the situation, … decisions to refrain from reading such documents or to return them, or both, are matters of professional judgment reserved to the lawyer.

### 3. <u>Non-Meritorius Assertions in Litigation – Violation of NY DR 7-102 A(2)</u>

Orrick is knowingly advancing a defense that is unwarranted by existing law.  The Uniform Commercial Code of New York is the law and the public policy of New York, which the district court unfortunately ignored for no legitimate reason.  The NY UCC Law cannot be extended, modified, or reversed by Mr. Martin, or the law firm of Orrick.  Plaintiffs' NY UCC claims for the KBC's violations of her statutory duties under §4-213 and §4-302, provides only limited defenses under the NY UCC Law, and a "forum selection" clause is no such defense under the UCC statute.  The NY UCC Law takes precedence, and as to the violations of §4-213 and §4-302, the law imposes strict liability on the Payor bank, KBC.

On May 22, 2014, Richard Martin, Esq., the self-proclaimed lead counsel for KBC, ████████████████████████████ *Horvath v. Banco Portugues Comercial S.A.,* 461 F. Fed. Appx. 61, (2d Cir. 2012), which was mistakenly relied on by the district court to lump together both banks, but which is distinct and inapplicable.  ████████████

████████████ KBC cannot "piggy back" on the unavailable Antwerp Diamond Bank ("ADB") forum selection "clause"  - <u>which has dropped out of the litigation</u>.[5]  It is important to note that <u>ADB and the forum selection clause is not part of this appeal.</u>  The forum selection "clause" does not exist as to KBC, and does not apply as to KBC's statutory violations, and does not apply to NY UCC liability.  ████████████████████████████

████████ Mr. Martin, and the Orrick firm, know, and it is obvious, the enforcement of the ADB clause as to KBC is improper, unjust and unreasonable and violates the law and public policy.

---

[5] The ADB forum selection clause - which has been dismissed - states in relevant part: "The obligations of the account holders, correspondents, guarantors and any other relevant third parties, and [ADB] are governed solely by the laws of Belgium. . . . The courts of Antwerp have sole competence [over disputes arising out of such obligations]". Thus, the clause applies to the **ADB and the obligations of ADB**. Orrick and Mr. Martin know ADB has been dismissed and is not part of the pending appeal against KBC.

6

## 4. **Lawyer's Obligation to Avoid Frivolous Litigation**

A lawyer has a professional obligation to the client, the court, and his adversaries to ensure that actions commenced and legal positions advanced are not frivolous and/or meritless. *Mareno v. Rowe,* 910 F.2d 1043, 1047 (2d Cir. 1990) (for a position to be frivolous, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands**),** cert. denied, 498 U.S. 1028 (1991)**;** see also *Fontaine v. Ryan*, 849 F. Supp. 242, 245 (S.D.N.Y. 1994) (lawyer has an obligation to pursue only appropriate actions despite client's insistence to contrary).  There is no valid defense to KBC Bank's NY UCC §4-213 and §4-302 statutory violations.[6] The N.Y. UCC Law does not provide a "forum selection clause" defense to a "non-signatory" of a clause as to statutory violations of the NY UCC §4-213 and §4-302.

---

[6] **§4-213 of the NY UCC LAW – NY CODE - Section 4-213: Payor Bank's Liability for Final Payment.** (1) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first: (a) paid the item in cash; or (b) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement; or (c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or (d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement. Upon a final payment under subparagraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item. (2) If provisional settlement for an item between the presenting and payor banks is made through a clearing house or by debits or credits in an account between them, then to the extent that provisional debits or credits for the item are entered in accounts between the presenting and payor banks or between the presenting and successive prior collecting banks seriatim, they become final upon final payment of the item by the payor bank.(3) If a collecting bank receives a settlement for an item which is or becomes final (subsection (3) of Section 4--211, subsection (2) of Section 4--213) the bank is accountable to its customer for the amount of the item and any provisional credit given for the item in an account with its customer becomes final. (4) Subject to any right of the bank to apply the credit to an obligation of the customer, credit given by a bank for an item in an account with its customer becomes available for withdrawal as of right (a) in any case where the bank has received a provisional settlement for the item,-- when such settlement becomes final and the bank has had a reasonable time to learn that the settlement is final; (b) in any case where the bank is both a depositary bank and a payor bank and the item is finally paid,--at the opening of the bank's second banking day following receipt of the item. (5) A deposit of money in a bank is final when made but, subject to any right of the bank to apply the deposit to an obligation of the customer, the deposit becomes available for withdrawal as of right at the opening of the bank's next banking day following receipt of the deposit.

Orrick did not file any motion for protective order as to what it claims is "privileged" or "confidential" email. Orrick provides no cases to support their frivolous position that ADB's dismissed "forum selection clause" preempts or blocks the NY UCC claims for statutory violations against KBC. There is no chance for the Orrick law firm to extend, modify or reverse the New York UCC Law, UCC §4-213 or UCC §4-302[7], as it stands - because that would need legislative action by the appointed legislators who represent the people of the State of New York.

The "forum selection clause" defense to UCC violations, interposed by KBC Bank, is unsupported by legal precedent, and is unsupportable. NY U.C.C. liability of KBC Bank is strict, and Mr. Martin's position is frivolous and unwarranted by existing law. The law imposes strict liability under UCC §4-302. KBC Bank violated the "midnight deadline" and "late return of item" rule. The law imposes strict liability when "final payment" is made under UCC §4-213. As return was "late" and payment "final" under NY UCC law, the Payor bank, KBC Bank, is held accountable for the face amount of both checks plus interest under the applicable law. KBC's late return of item and final payment as to checks is <u>not reversible</u> under NY UCC law.

## 5. Prohibition on Interposition of General Denial: N.Y. State Bar Op. 469 (1977)

Under DR 2-109 (A)(2), a lawyer may not properly interpose a general denial if the lawyer knows the client does not have a valid defense. Orrick knows, bank checks are strictly enforced as a matter of law and public policy, and KBC has no valid reason for nonpayment.

---

[7] **N.Y. UCC. LAW § 4--302 : NY Code - §4—302: Payor Bank's Responsibility for Late Return of Item**. In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of Section 4--207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of (a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or (b) any other properly payable item unless within the time allowed for acceptance or payment of that item the bank either accepts or pays the item or returns it and accompanying documents.

As Mr. Martin and Orrick know, and it is obvious, KBC must pay the bank checks, and

return the Plaintiffs' money under the law. The statutory provisions of UCC §4-213 and §4-302

impose strict liability on the Payor bank KBC, as a matter of law and public policy.[8]

On May 24, 2014, Mr. Martin tried to "play it off" and claimed that his concession as to

the law on May 22 was not a concession but - "entirely sarcastic". So, Mr. Martin tried to twist

things around and wanted me to go into his head and determine whether he had a frame of mind

of "sarcasm". But I am not a psychologist to read Mr. Martin's mind, and I can only look at the

plain and ordinary meaning of the words used in his email, ███████████████████

███████████████████████████████████████████.

---

[8] See e.g., *H. Schultz & Sons, Inc. v. Bank of Suffolk Cty*., 439 F. Supp. 1137 (E.D.N.Y. 1977) (UCC §4-213 liability after final payment); *SOS Oil Corp. v. Norstar Bank*, 76 NY2d 561, 561 N.Y.S.2d 887 (Oct. 18, 1990)(UCC §4-302 liability for late return of item); *Kaufman v. Chase Manhattan Bank, N.A*., 370 F. Supp. 276 (1973 S.D.N.Y.) (Bank checks are strictly enforced as a matter of law and public policy); *Chiofalo v. Ridgewood Savings Bank of Rochester*, 816 N.Y.S.2d 324 (2006) (Payor bank's unilateral charge back was improper as a matter of law after final payment of a demand item pursuant to UCC§ 4-213). *General Motors Acceptance Corporation v. Bank Of Richmondville*, 611 N.Y.S.2d 338 (1994)(UCC §4-213 liability); *Manufactures and Traders Trust Company v. County Trust Region of the Bank of New York,* 398 N.Y.S.2d 298 (1977)(UCC §4-302 liability for late return of item beyond the midnight deadline). There are other cases confirming KBC's UCC liability.

Even if KBC paid the check by mistake it is irrelevant and unavailing as a defense, and as it was a final payment under the statutory definition. KBC remains fully liable for the $35,110.72USD. KBC is also liable for the Euro Check for 56,414.73. This was not only "late return of item" but also KBC never returned the Euro check. Only NY UCC defenses are available to a bank as to claims for breach of that bank's statutory duty under NY U.C.C. §4-302 or §4-213. KBC bank cannot reach outside the Code to another bank's (ADB) forum selection clause as defense to statutory violations. The NY UCC *§4-302* and *§4-213* permit only limited defenses to a Payor bank's accountability, and the NY UCC clearly intends to create a statutory liability - independent of general common-law and equitable and other defenses not stated in the NY U.C.C. - Article 4. For example *UCC §4-302 (a)* provides that, in the absence of a valid defense, a payor bank is accountable for the amount of a demand item received by it "whether properly payable or not" if the payor bank either retains the item beyond midnight of the banking day of receipt without settling for it (the midnight rule) or fails to pay or return the item or send notice of dishonor "until after its midnight deadline" (midnight of the next banking day following receipt of the item [*UCC 4-104 (1) (h)*]). KBC Bank violated the midnight deadline rule of UCC 4-302 and is liable for the face amount of the Euro Check in the amount of 56,414.73 Euro. KBC is also liable for the face amount of the Dollar check in the amount of 35,110.72. Payment by KBC should be a mere formality, not protracted appeal.

On May 22, 2014, I sent Mr. Martin a letter regarding the inapplicability of *Horvath*, showing the district court had erred in dismissing KBC on the basis of forum selection clause that belongs only to ADB which is dismissed, and I sent him pertinent documents proving my legal authority to give the KBC bank wire transfer instructions as to my funds.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.

Under the New York Rules of Professional Conduct Rule 1.0(b) which defines "belief" as follows: (b) "Belief" or "believes" denotes that the person involved actually believes the fact in question to be true. Rule 1.0(b) also states "*A person's belief may be inferred from the circumstances*". Under the circumstances, █████████████████████████████████

██████████████████████   ████████████████████████████████████

██████████.   ████████████████████████████████ the district court erred in relying on *Horvath,* because the elements of "**nearly identical**" claims, that arise "**out of the contract**" are **not met** - and the ADB forum selection clause has dropped out. The UCC claims for violations of UCC 4-213 and 4-302 are **independent claims against KBC** - and have nothing to do with ADB and were *never asserted* as to the ADB; for the reason that UCC §4-213 and 4-302 apply ***only*** to KBC - the Payor bank. Clearly, ADB is **not** the payor bank. The checks are drawn on KBC. Obviously, the ADB forum selection clause is no defense to UCC statutory violations by KBC.

10

███████████████████████████████████████

███████████████████████████████████    ███████████████████████████████████████ KBC

cannot "piggy back" on ADB's forum selection clause based on *Horvath*.  Also Rule 1.0(K)

defines "know" as follows: "(k) "*Knowingly*," "*known*," "*know*," or "*knows*" denotes actual

*knowledge of the fact in question. A person's knowledge may be inferred from circumstances*."

███████████████████████████████████████████████████████████████████

██████████, and thus if Mr. Martin insists on multiplying proceedings, he may be held

personally responsible for all the expenses of the appeal because he is vexatiously and

unreasonably multiplying the proceedings.  The district court erred by "lumping together" KBC

and ADB on the basis of *Horvath*, █████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████, and thus the district court erred in its reliance on *Horvath*.

Mr. Martin cannot repudiate his clear admission by claiming "sarcasm" which is a

mockery.  There is no indication of sarcasm in his spontaneous concession on May 22, 2014.

The court need not reach into Mr. Martin's state of mind of being "entirely sarcastic" but simply

the court can analyze the plain contents of his email and the ordinary meaning of the words.

In addition, if true, that Mr. Martin was being "*entirely sarcastic*" in disclosing to *third*

*parties* what he claims is "*privileged*" - then that is further violation of New York Rules of

Professional Conduct - as it would be a serious breach of his "duty of competent representation"

under Rule 1.1(a), as to his client KBC.  The intentional breach of confidentiality, addressed to,

and essentially saying bye to "Helen and Patrick", i.e. Helen Gredd and Patrick Garlinger who

are not within his firm, but who belong to the firm of Lanklert, Siffert, Wohl - is a serious breach

of competency by Mr. Martin - if he maintains the email is - "privileged" and "confidential".

The fact that Mr. Martin's email was addressed to _third parties_, and that it is the _second inadvertent email_, shows Mr. Martin's lack of concern for "privilege" or "confidentiality" - and shows the lack of competent procedures to protect against inadvertent disclosures.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████, it is obvious ████████████████████████ that the district court has erred in its reliance on the _Horvath_ case, Order, Doc. #50, footnote 9, because (a) KBC is a non-signatory to any forum selection clause, and KBC has no contract and no prior account and no relationship with Midamines Sprl Ltd. and Hassan A. Abbas, Esq., and (b) Plaintiffs are non-signatory to any forum selection clause with KBC, and also, (c) significantly, the first requirement, under the _Horvath_ test of "**_nearly identical_**" claims is not met for KBC - and can never be met.

The UCC 4-213 and 4-302 claims against KBC - are wholly independent - and are not "**_nearly identical_**" to any claims against the dismissed ADB. The ADB has dropped out of the appeal, and the ADB forum selection clause has dropped out of the appeal. The claims against ADB have all dropped out, and ADB never had UCC 4-213 or 4-302 claims against ADB.[9]

---

[9] The statutory NY UCC claims (UCC 4-213 and 4-302) against KBC are **not** "**_nearly identical_**" - to the former claims against ADB which have been dropped. The statutory claims **do not** "**_arise out of_**" the ADB contract, but the claims arise out of the UCC Statute – which is an independent New York law – and thus arise independently against KBC under the UCC Law. There are no UCC claims against Antwerp Diamond Bank which is not part of the appeal. The forum selection clause defense is futile and not available to KBC. KBC cannot "piggy back" on ADB's forum selection clause based on the _Horvath_ case, which did not involve violations of UCC, as in this case with KBC. The "forum selection" clause in _ADB's_ contract with a _Congolese_ company - is not applicable to KBC, _ab initio_, and even if it were, it is unenforceable because it would violate the UCC law and New York's public policy - as adopted by the New York legislature. In addition, here the KBC violations of the NY UCC was "**unusual**" as stated in _Atlantic Marine_, 134 S. Ct. 568, 581-82 (2013) and the ADB clause is unenforceable to KBC. Also, it was **not foreseeable that KBC will violate the law**. The test for a closely related non-signatory seeking to apply a forum selection clause against another "signatory" is **foreseeability** - as stated by the district court. Doc. 50, p. 7, fn 9. See, _Magi XXI, Inc. v. Stato Della Citta Del Vaticano_, 714 F. 3d 714, 723 (2013). KBC is not closely related. KBC is a "non-signatory". Plaintiffs are "non-signatory". ████████ ████████████████████████████ _Horvath_ is distinct, and thus KBC cannot "piggy back" on ADB.

6. **A Purported Forum Selection Clause That is Unjust and/or**
   **which Violates Public Policy is Unenforceable**

As stated by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 18 (1972), a forum selection clause which violates public policy cannot be enforced.  Moreover, it can be clearly shown that enforcement is unjust and unreasonable under the fourth part of the *Phillips* test, as it violates the UCC Law, and unjustly enriches KBC Bank who is withholding Plaintiffs' funds.  See *Phillips v. Audio Active*, *Ltd.,* 494 F.3d 378 at 383-384 (2nd Circ. 2007).

There are many cases supporting the established legal standards for invalidating an unjust "forum selection" clause and/or a clause that violates public policy.  See *Red Bull Assocs. v. Best W. Int'l, Inc.,* 862 F.2d 963, 967 (2d Cir. 1988)(finding denial of motion to transfer under *28 U.S.C. § 1404(a)* proper, despite forum selection clause, since district court acted within its discretion in holding that transfer would undermine civil rights statutes); see also, *Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1365 (2d Cir. 1993), (federal courts would decline to enforce forum selection clause that undermined public policy of protecting American securities investors).  See *F.A. Straus & Co. v. Canadian Pac. Ry. Co.*, 254 N.Y. 407, 173 N.E. 564 (Nov. 18, 1930) (a contract provision of a clause in a bill of lading was held invalid and unenforceable because it violated public policy).   The people of New York, as represented by their New York legislators, enacted the Uniform Commercial Code in New York, and adopted a policy of strict liability on banks for violations of the N.Y. U.C.C. §4-302 and §4-213.  This N.Y. U.C.C. law is highly relevant and applicable - and an inapplicable contract clause from ADB Belgium - cannot be used by KBC to circumvent the law, or <u>wipe out an entire body of law</u>, the NY UCC Law.

7.    **Conflict of Interest**

███████████████████████████████████████████████████████

████████████████████████████    the documents sent by Plaintiffs, clearly showing that Hassan

13

Abbas, was duly and legally authorized to give the KBC and ADB payment instructions as to wire transfer of the funds, which would obviate the need for time-consuming and expensive litigation for all parties.

Mr. Martin's initial decision on May 22 was not to pursue an amicable resolution, ███ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ and which demonstrate that Hassan Abbas has full authority to give the KBC bank payment instructions as to the funds - and which should be followed under the law.  Only after the inadvertent email was sent did Mr. Martin forward the materials to KBC.  What Mr. Martin fails to acknowledge is that if settlement is achieved this would have the positive effect on his own client, first, KBC compliance with the law by payment of Bank checks, and second, minimizing the costs on his client KBC by obviating the need for time-consuming and expensive litigation in the appeal, and third, promoting an efficient, just and proper resolution, and payment of Plaintiffs' funds.

Orrick's continued advocacy of a frivolous legal position that is not warranted by existing law, demonstrates bad faith by Orrick, and also an appearance of impropriety, and engenders a conflict of interest, as Orrick's conduct seems designed to increase the Orrick firm's billable hours, and serve the firm's financial interests, to the detriment of Orrick's client KBC, and to maliciously injure Plaintiffs by the continued conversion of the funds by KBC, to harass, and delay the due payment to Plaintiffs, for another year, and to the detriment of the judicial system and its resources, when it is obvious that KBC Bank must comply with the N.Y. UCC Law, and to pay monies owing, and to pay the Bank checks, as required under the law and the applicable cases interpreting the statute, and under UCC §4-213 and UCC § 4-302, and as the law, justice and equity require payment of Plaintiffs' monies.

14

Plaintiffs'-Appellants proposed to resolve the matter amicably and made good faith efforts in the past and present as the Plaintiffs' funds have been improperly withheld and as the payment of Bank checks, and Plaintiffs' monies, should be made by KBC according to the law.

Mr. Martin and Orrick pretends that: (a) reasonable settlement offers to resolve the case, and (b) to minimize the costs of the appeal as to all parties, and (c) the letters and documents showing Mr. Abbas' legal capacity to give the bank payment instructions, and (d) letters which demonstrate the legal errors of the district court, and point out the law, and (e) Plaintiffs' correct exercise of their right to appeal – is somehow "abusive" and "harassment" and "forcing" because Plaintiffs started the suit. These contentions by Mr. Martin border on the absurd and no one is "twisting KBC's arm". The reason for the suit is KBC's violations of law and failure to pay Bank checks. Instead of advising KBC to comply with the law, Mr. Martin insists on a frivolous legal position, █████████████████████████, to assist conversion by KBC of Plaintiffs' funds, and to maintain the unjust enrichment of the KBC and persistent violations of the law.

There is no reason for KBC to withhold payment. The district court, in its entire opinion, does not give a single reason at present for the non-payment of the valid and irrevocable bank checks. The KBC has no reason not to pay Plaintiffs' monies. The appeal is properly based on the facts, and the NY UCC Law, and case law, to review and correct the district court's oversight and legal errors, and to prevent the unjust enrichment of KBC, and to ensure payment of checks and compliance with law. KBC, who has conceded there is no injunction as to KBC, must pay.

████████████████████████████████████

████████████, ██ █████████reliance on the district court decision, and on the citation to *Horvath*, is ███████████████ clearly erroneous, and without factual basis and without legal merit, and Mr. Martin knows, and Orrick know, they are pursuing a frivolous legal position.

15

The motion to disqualify and appeal is justified and ultimately the Court of Appeals'
procedures and objectives are so justice and equity triumph, and the rules favor a speedy and
efficient resolution, and the rules favor avoidance of frivolous positions to harass and delay.[10]

## 8. Judicial Sanctions and/or Disqualification

The court has the "'well-acknowledged' inherent power of a court to levy sanctions in
response to abusive litigation practices." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765
(1980) – and to ensure compliance with the law.

Pursuant to the Court's inherent power and the federal rules and rules of professional
conduct there are various types of obligations imposed on lawyers and various sanctions that
may be considered and applied.[11]

---

[10] Mr. Martin and Orrick cannot in good faith any longer rely on the decision of the district court for the reason that ███████, and the *Horvath* elements have not been met by KBC. As to his email, there is no privilege, and/or the privilege has been waived or destroyed, as it was sent to me, and to other lawyers outside the Orrick firm, and outside the scope of the attorney-client relationship. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The email contains no confidential communications and no privileged documents, and shows the frivolous legal position that Orrick is advancing, which is contrary to law. Mr. Martin apologized, but I advised him I would seek Orrick's disqualification, and he responded that we "waived" our rights as to KBC which is not true. The issues on appeal are questions of law – the NY UCC law, statutory interpretation, enforceability of ADB forum selection clause as to a "non-signatory" KBC, are issues reviewed *De Novo* by the Court of Appeals and the district court accorded no deference. ███

███, which showed the KBC's legal obligation to follow my payment instructions as to the funds, by law, as I am the President of Midamines Sprl Ltd. in Illinois, and authorized legal director of Midamines Congo, published in the government's publication, Official Journal of the Democratic Republic of Congo.

[11] Judicial sanctions provided under Sections 130.1-2.3 of the New York Rules of Court, 22 NYCRR 130.1 and NYCPLR § 8303-a represent New York's counterpart to Fed. R. Civ. P. 11. Section 130-1.1(c) of the NYCRR defines "frivolous" conduct as (1) "completely without merit in law or fact and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law," or (2) "undertaken primarily to delay or prolong the resolution of the litigation, or to harass or to maliciously injure another." Section 130-1.1(a) grants the court the discretion to (1) award to a party costs and attorneys fees resulting from frivolous conduct by another party, and (2) impose financial sanctions on the party or attorney who engages in frivolous conduct. The total amount of costs awarded and sanctions imposed cannot exceed $10,000 "for any single occurrence of frivolous conduct." See § 130-1.2.

A lawyer who "so multiplies the proceedings in any case unreasonably and vexatiously" is subject to sanctions under 28 U.S.C. § 1927. This phrase covers a broad range of dilatory litigation tactics, including persistence in a meritless position — and unreasonable conduct that prolongs the case and causes additional expense and delay. Mr. Martin is advancing a frivolous legal position which vexatiously and unreasonably prolongs the litigation, to harass, maliciously injure and cause undue expenses; and he continues to make the frivolous arguments – ██████████

███████████████████████████████████████████████████ – after a reasonable inquiry following my letter as to the law, ████████████████████

████████████████████, and despite KBC's declarations such as admissions by Grimmig, Verlinden, Berkers, on the record – that show there is no impediment or injunction or reason not to pay, and demonstarte KBC's NY UCC Law violations – and KBC's liability.

████████████████████████████████████████████████████

████████████████████ – that the district court's, and his arguments, are without merit in law or fact, and cannot be supported by any reasonable argument for an extension, modification or reversal of existing law. The UCC Law is the law of New York and KBC is strictly liable.

████████████████████████████████████████████████████

████████████████, ████the facts here and the law renders the *Horvath* case inapplicable, ████

██████████████████████████████, and lack of merit in his own argument, and that Plaintiffs are correct, the only conclusion is that Mr. Martin's continued persistence in maintaining a frivolous legal position is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or to maliciously injure Plaintiffs by KBC indefinitely withholding payment of the funds for no reason. This is a violation of the applicable rules of professional conduct, and amounts to sanctionable conduct for abusive and frivolous litigation.

17

Rule 11 applies to signed papers by the attorney. If Mr. Martin and Orrick introduce a frivolous Appellee's brief for KBC, and sign and present such a document, ████████████ ████████████████████████████████████████████████████████, would be sanctionable conduct under Rule 11, as it would assert a knowingly frivolous legal position, and rely on an inapplicable case, and on ████████████ frivolous defense unwarranted by existing law, and as NY UCC law imposes strict liability on KBC. Orrick knows, and it is obvious, their frivolous legal position is unsupportable and made in bad faith, merely to harass, maliciously injure, cause expenses, and allow KBC to unlawfully withhold payment of Plaintiffs' funds.

**9.   Ethical Considerations**

If Mr. Martin or a member of Orrick signs the appeal certifying that *Horvath* applies, he would be making a false statement of law and fact, ████████████████████████ ████████████████████████████, thus inapplicable, and also such a signature would violate the Fed. Rules of Civ. Proc., Rule 11, and NY DR 7-102(A)(5) (Model Rule 3.3).

NY DR 7-102(A)(5), prohibits a lawyer from making knowingly false statements of law or fact to anyone - a court, an opposing party, another lawyer, a witness, or a client. The forum is immaterial. Knowing falsehoods are proscribed in negotiations, letters, legal briefs, status conferences and hearings. Mr. Martin has violated and intends to violate NY DR §7-102(A)(5).

NY DR 7-102(A)(3), which provides that "a lawyer shall not conceal or knowingly fail to disclose that which the lawyer is required by law to reveal," is implicit in paragraph (a)(2) of Model Rule 3.3. Mr. Martin and Orrick are obliged to reveal to the court and client, and in their brief, ████████████████████████████████████████████████████████

NY DR 7-106(B)(1), which requires a lawyer to disclose "[c]ontrolling legal authority known to the lawyer to be directly adverse to the position of the client and which is not disclosed

18

by opposing counsel," is substantially identical to paragraph (a)(3) of <u>Model Rule 3.3</u>.  The controlling legal authority has been presented by Plaintiffs which demonstrates that KBC is liable for violations of NY UCC Law §4-213 and §4-302.  Mr. Martin must disclose, ███████ ██████████, *Horvath* is distinct and adverse to his client KBC, who violated the NY UCC, and he must disclose adverse cases to KBC, and point out the legal errors that he believes the district court made, ████████████████, and this is essential to the administration of justice.

<u>NY EC 7-22</u> provides: "Respect for judicial rulings is essential to the proper administration of justice; however, a litigant or lawyer may, in good faith and within the framework of the law, take steps to test the correctness of a ruling of a tribunal."

Mr. Martin realizes that Plaintiffs-Appellants have the right to appeal in good faith and take steps to reverse the clear legal errors of the District court as to KBC, and Counts I (Failure to Pay Checks/UCC violations) and Count II (Unjust Enrichment).

As Mr. Martin is lead counsel and partner and supervisory lawyer, therefore he cannot permit the other lawyers to violate the rules of professional conduct or sign papers or advance positions which are frivolous and not warranted by existing law and serve merely to delay and harass and maliciously injure to deprive Plaintiffs of their monies and cause undue expenses. *Model Rules*: Rule 5.1 Responsibilities of Partners, Managers, and Supervisory Lawyers.[12]

---

[12] Rule 5.1 (a) A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.  (b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct. (c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if: (1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or (2) the lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

The lawyers at Orrick must all conform to the Rules of Professional Conduct, and cannot ratify the frivolous legal position. Orrick knows of ███████████████████████████ ██████████████, and so inapplicable to KBC. Mr. Martin has been "hoist by his own petard" as Shakespeare said - and he and Orrick ***cannot continue***, in bad faith, to represent KBC, ██████ ███████████████████████████████, and thus must be disqualified.

As Mr. Martin may be aware, pursuant to <u>EC 7-21</u>:"the civil adjudicative process is primarily designed for the settlement of disputes between parties...". Therefore, the Plaintiffs' valiant efforts to resolve matters amicably and to encourage settlement and payment by KBC should be applauded, and praised by Mr. Martin, not disparaged. Mr. Martin refers to settlement offers as "abusive" and "harassment" and "forcing". Given Mr. Martin's *own belief*, Plaintiffs' are correct as to *Horvath's* inapplicability, then settlement would be in his own client KBC's legal, moral, and financial interest, and would help to minimize legal costs, as the law and facts are clear that KBC must pay Plaintiffs' monies. KBC cannot indefinitely and improperly withhold in New York or Brussels, money which belongs to Plaintiffs. The money does not belong to KBC Bank, and there is no justification for non-payment of the Bank checks. KBC Bank has a legal obligation to pay the money under the law, and follow the payment instructions.

The abusive conduct of Mr. Martin, and Orrick, in persisting in a frivolous legal position, warrants disqualification of Mr. Martin and the entire firm of Orrick, whether under the Rules of Professional Conduct, the Ethical Considerations, and under the Court's inherent power to curb abusive litigation practices that are outside the bounds of the law, and to prevent KBC's lawyers from advancing frivolous legal positions, undertaken primarily to delay or prolong the resolution of the litigation, to harass, and to maliciously injure Abbas and Midamines, and increase expenses for no legitimate reason. See e.g., *Chambers v. Nasco, Inc.*, 501 U.S. 32, 46 (1991).

20

Respectfully submitted,                                            June 8, 2014

_s/ Hassan A. Abbas_
Counsel of Record for Plaintiffs-Appellants