# Exhibit 7

_____

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT
_____

| | |
|---|---|
| _____ | |
| MIDAMINES SPRL LTD. ) | **Case No. 14-862** |
| Plaintiffs-Appellants ) | |
| v. ) | On Appeal From the USDC NYSD |
|   ) | 12 cv 8089, Hon. Richard J. Sullivan |
| KBC BANK NV ) | Date of Final Order/Notice of Appeal |
| <u>Defendants-Appellees</u>_____ ) | Filed: March 19, 2014 |

**PLAINTIFFS MOTION FOR LEAVE TO FILE SUR-REPLY IN FURTHER SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO SEAL**

KBC's Reply Memorandum (Doc. 100) in support of the Motion to Seal documents raises new legal issues and misrepresents facts. Accordingly, Plaintiffs seek the Court's permission to file a brief Sur-Reply memorandum and to file the supporting Declaration of Hassan A. Abbas.

## MEMORANDUM OF LAW

When a reply memorandum introduces new legal arguments or false factual information, "the rationale of fair play" guides the Court to disregard it or, if the Court is going to consider it, to allow the other side to have "an opportunity to be heard" on the new legal arguments and alleged factual information. Se e.g., *Newton v. City of N.Y.*, 738 F. Supp. 2d 397, 417 n.11 (S.D.N.Y. 2010). As such, the Plaintiffs respectfully request the Court to accept the sur-reply and declaration.

1

### A. Mr. Martin's false factual allegations warrant a sur-reply.

Mr. Martin and KBC introduce factual allegations that are false. As such, if the Court is to consider KBC's reply submission, then it is appropriate for the Plaintiffs to respond. *See, e.g.*, *Bonnie & Co. Fashions v. Bankers Trust Co.*, 945 F. Supp. 693, 708 (S.D.N.Y. 1996) (if new evidence is presented in reply brief or affidavit, district court should permit nonmoving party to respond).

Plaintiffs informed Mr. Martin that they would seek to file a sur-reply and he stated that he opposed the motion. In light of the objection by KBC's counsel, the Plaintiffs' have taken the precaution of filing this motion and submitting the sur-reply and declaration of Hassan Abbas to the Court in advance of the hearing on the motion to disqualify Mr. Martin and Orrick scheduled for July 15, 2014. *See e.g., Bayway Refining Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 227 (2d Cir. 2000) (refusing to consider issues not raised because "OMT did not move the district court for leave to file a sur-reply to respond to Bayway's evidence. OMT thus failed to seek a timely remedy for any injustice."); See e.g., *Alexander v. F.B.I.*, 186 F.R.D. 71, 74 (D.D.C. 1998) (allowing sur-reply because "[i]f the court were to deny plaintiffs leave to file the sur-reply, plaintiffs would be unable to contest matters presented to the court for the first time in the form of Davis' declaration"); *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 101 (D.D.C. 2005) (same).

Mr. Martin argues for the first time in the Reply Memorandum that his email of May 22, 2014 was a "*single, errant email*" – but that is <u>categorically not true</u>. Mr. Martin, as the movant, is not entitled to the final word when submitting a false statement to the court, particularly given the procedural posture of the defendants' pending motion to seal (Doc. 66) and the plaintiffs' motion for disqualification (Doc. 53) of Mr. Martin and Orrick.

The misrepresentations in Mr. Martin's and Orrick's reply memorandum (Doc. 100) must be addressed and disclosed so that Plaintiffs have an opportunity to respond. Plaintiffs should be able to respond (via memorandum and declaration of Hassan Abbas) to Mr. Martin's false contention as to a "single, errant email". *Bonnie & Co.*, 945 F. Supp. at 708. Allowing Plaintiffs request would benefit the Court's review. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco, Inc.*, 2003 WL 1618534, at *1 (S.D.N.Y. Mar. 27, 2003), allowing sur-reply affidavits:

> [A]n examination of the briefs in the sequence in which they were submitted indicates that the issues . . . simply became further refined as both sides presented their evidence and responded to each previous submission. Thus, since there is no evidence of prejudice to plaintiffs or bad faith on defendants' part, and the parties will be best served by the Court's deciding the . . . issue presented to it on the most complete factual basis possible, the Court will consider the evidence contained in defendants' supplemental affidavit. On the other hand, as noted above, without a sur-reply, the State is prejudiced. *Cf. Becker v. Ulster County, NY*, 167 F. Supp. 2d 549, 555 n.1 (N.D.N.Y. 2001) (noting that party "filed a surreply addressing this new contention and, thus, is not prejudiced"); *Dunn v. Zimmer Inc.*, 2005 WL 563095, at *2 (D. Conn. Mar. 9, 2005) ("The post-motion disclosure of a witness... …… must be considered highly prejudicial.").

On April 29, 2014, Mr. Abbas received the first inadvertent email from Mr. Martin. In this email, Mr. Martin stated in part to his lawyer colleagues at Orrick,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████.

1. Mr. Martin apologized for his April 29, 2014 email, as he had been "hoist by his own petard" and carelessness, and he indicated he would forward the proposal to KBC – however Mr. Martin failed to implement any reasonable precautions to prevent subsequent disclosures. Mr. Martin failed to fix the settings on his iPad or his computer in order to prevent future inadvertent emails. It happened again.

2. On May 22, 2014, Mr. Abbas received a second inadvertent email from Mr. Richard Martin of Orrick Herrington Sutcliffe LLP, sent from rmartin@orrick.com to, as follows: habbas@handlerthayer.com, ha.law@hotmail.be, nraj@orrick.com, HGredd@LSWLAW.com, sptlaw@sbcglobal.net, pgarlinger@lswlaw.com. The email was sent to Mr. Abbas, and to lawyers outside the law firm of Orrick, such as Helen Gredd and Patrick Garlinger, and even to Mr. Santo P. Terenzio, an attorney in Illinois, who is not participating as counsel in this case. The email stated:

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████

4

3.  On May 22, 2014, the same day, Mr. Abbas received another email from Mr. Martin which stated: "*Mr. Abbas, I apologize for doing this again.*"  Mr. Martin further stated: "*This is apparently a fault in my iPad that I was unaware of*", but Mr. Martin was aware of the existence of a fault in his iPad as of April 29, 2014.

4.  Mr. Martin was fully aware that his email of May 22, 2014 was his <u>second inadvertent email</u> – <u>but he failed to disclose this material fact to the court</u> in his Reply Memorandum because it shows that he failed to take reasonable precautions after sending out his first inadvertent email, and it shows that the email of May 22, 2014 was not a "single, errant email",  and it shows that Mr. Martin does not meet the elements of Rule 502, Federal Rules of Evidence, and it shows that Mr. Martin has waived any *alleged* privilege by his voluntary disclosure to third parties of the May 22, 2014 email, and Mr. Martin waived privilege by his failure to take reasonable precautions to prevent inadvertent disclosures.

5.  Mr. Martin falsely states in his Reply Memorandum (Doc. 100, p. 10) that:

   "*Furthermore, Plaintiffs cannot demonstrate that the mistaken transmission of a single, errant email to Mr. Abbas was the result of a failure to take reasonable precautions on the part of KBC's counsel.*"

Plaintiffs can demonstrate the email of May 22, 2014, was not the "*transmission of a single, errant email*" – but was the second email transmission – and was the result of a failure to take reasonable precautions on the part of KBC's counsel.

5

6.　　On May 24, 2014, two days after the second email, Mr. Martin sent Mr. Abbas yet another email which included a statement that: "*I have now fixed the flaw in the setting in my computer which automatically included all recipients to emails which I intended to forward to specific people..*". Mr. Martin's device settings could have been fixed after his first inadvertent email on April 29, 2014.

**B.　　KBC introduces new legal arguments warranting a sur-reply.**

Mr. Martin's reply raises new legal issues regarding KBC's alleged "*parent-subsidiary*" relation to ADB. Plaintiffs dispute this proposition because KBC has sold the ADB, toward the end of 2013, to the Yinren Group of China, and the sale of ADB was mandated by the European Commission (one of KBC's regulators), and Yinren was awaiting regulatory approval in several countries, and may have even received such final approval by now. According to information and belief, Yinren is the "parent" in control and owns ADB. *See* District Court Doc. #48-1.

In its original filing, Orrick contended principally that Mr. Martin did not waive privilege by voluntary disclosure to third parties outside his firm because the email was sent to persons he had an *alleged* "common interest" or "joint defense", while now he makes an argument that there are no "judicial documents" to which the presumption of public access applies, and that Plaintiffs cannot establish a waiver of privilege. However, Mr. Martin is aware that <u>he has the burden</u> of establishing privilege, and that it has not been waived. He has not met his burden.

6

KBC's reply also cites authority that was not cited in KBC's original filing. The legal record is publicly available and, to the extent it is relevant, KBC could have addressed these assertions previously. KBC's decision to introduce these arguments for the first time in its Reply Memorandum warrants allowing a brief response from the Plaintiffs.

KBC's request of the Court to seal the judicial documents in the public record – such as the *Plaintiffs Motion to Disqualify*, and *Defendant's Motion to File Response Under Seal*, and various *Oppositions* and *Replies*, is unwarranted. Mr. Martin even requests the Court to seal the *Plaintiffs-Appellants' Initial Brief* just because the brief contains reference to Mr. Martin's little email. The request should be denied because KBC cannot overcome the strong presumption of public access to documents relevant to the judicial process. Furthermore, Mr. Martin's conclusory assertions of privilege or work product simply because his email was inadvertently sent is insufficient to meet his heavy burden of proving privilege or confidentiality, and his burden of proving that it has not been waived.[1]

---

[1] KBC's motion for sealing documents does not comport with the constitutional standards set forth in *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1 (1986), protecting the public's right to access judicial documents. The public enjoys a qualified First Amendment right of access to judicial documents. *See Press-Enterprise*, 478 U.S. at 8-9 (setting standard for invocation of First Amendment right); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (common law and constitutional rights of access to judicial documents apply in civil case).

KBC has not overcome the constitutional right attached to documents that "have historically been open to the press and general public" when "public access plays a significant positive role." *Press-Enterprise*, 478 U.S. at 8; *Lugosch*, 435 F.3d at 120. Courts in this circuit consistently recognize there is a strong presumption of public access to documents filed with the court and that are relevant to the performance of the judicial function. The Second Circuit has set forth a three part test to determine whether documents filed in a lawsuit must be accessible to the public:

> First, the court must determine whether the documents are indeed judicial documents, to which the public has a presumptive right of access. Second, if the documents are judicial documents, the court must determine the weight of the presumption, that is, whether the presumption is an especially strong one that can be overcome only by extraordinary circumstances or whether the presumption is a low one that amounts to little more than a prediction of public access absent a countervailing reason[,] or whether the presumption is somewhere in between. Third, once the weight of the presumption is determined, a court must balance competing considerations against it.

*King v. Pharmaceuticals, Inc. v. Eon Labs, Inc.*, 04-CV-5540 DGT, 2010 WL 3924689, *4 (E.D.N.Y. Sept. 28, 2010)(citations omitted).

Accordingly, the Court must first determine whether the several documents KBC is seeking to seal are judicial documents, and of course Plaintiffs-Appellants' Opening Brief, and the submitted Motions and Responses and Memorandums, and Declarations and Replies are all judicial documents relevant to the performance of the judicial function.

The New York Rules of Professional Conduct, Rule 4.4, dealing with inadvertent emails, also deem readable electronic information such as faxes and emails as documents. See Comments Rule 4.4(b).

In order to determine whether a document is a judicial document entitled to the presumption of public access the Court must evaluate whether the document is relevant to the performance of the judicial function and useful in the judicial process. *United States v. Amadeo*, 44 F. 3d 141, 145-46 (2d Cir. 1995)("We think that the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."). It is axiomatic that the documents filed in the appellate court, such as the Plaintiffs-Appellants' Initial Brief, pertaining to the statutory violations of the law by KBC and failure to pay Bank checks, and error of the district court in applying *Horvath* and an ADB forum clause to KBC, and the various filed motions and responses and replies, presented in this appeal, are indeed relevant judicial documents.

The declarations submitted by Mr. Martin, who declares his own sarcasm in his email of May 22, 2014, and his misrepresentations of facts in court filings, are relevant judicial documents, and also go the credibility of Mr. Martin and provide reasons for his disqualification. Mr. Martin unilaterally claims that his "sarcastic" email must be sealed and is privileged work product – but it is not so – and his motion to seal cannot overcome the public's right to access to judicial documents.

9

Mr. Martin's alleged sarcasm is not a higher value to be preserved or sealed, and the Court need not seal, nor tailor, nor make redactions of documents here as proposed by Mr. Martin.[2]  Mr. Martin supplied declarations in this appeal stating that his email of May 22, 2014 was "*purely sarcastic in nature*", see e.g., Sealed Declaration of Richard Martin, June 23, 2014, page 6, ¶12.  According to his *own* statement, if it is to be believed, Mr. Martin is capable of sarcasm, and because his email, as he stated, was intended as "*sarcastic*", thus Mr. Martin's email was <u>not</u> created in "anticipation of litigation" and cannot be "work product" and cannot be privileged, because Mr. Martin's email as he declared, was sarcastic, and meant as a mockery.  Mr. Martin's motion and reply is a mockery of the judicial system.

---

[2] We are not in discovery under Rule 26(b)(3), and to qualify as work product the document must be ("[A] document created because of anticipated litigation, which tends to reveal mental impressions, conclusions, opinions or theories concerning the litigation". *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998).  The email does not qualify as work product because: (a) Mr. Martin declares his email of May 22, 2014, was intended to be "<u>purely sarcastic in nature</u>", and Mr. Martin's argument is the email <u>does not reveal</u> his real mental impressions, conclusions, or theories, ███████████████, and, (b) by his own admission, Mr. Martin's email entails sardonic comments, and so his little email was not created because of anticipated litigation and thus is not privileged "work product", and, (c) Mr. Martin waived privilege by voluntary disclosure to third parties outside his law firm, like Mr. Terenzio, and others with whom no joint defense agreement exists at present in the appeal, as ADB has dropped out, and the forum clause has dropped out, and (d) it was the <u>second inadvertent email</u> – thus showing Mr. Martin's negligence and <u>failure to take any reasonable precautions</u> so as to prevent the repeat inadvertent emails.  The Court is not required to seal from the public eye, Mr. Martin's self-declared sardonic comments.  To seal documents the Court must make specific findings on the record to justify sealing documents and here no justification exists.

10

Mr. Martin attempts to shift the burden of proof in his Reply in stating that: *"Plaintiffs fail to explain why the communication from KBC's counsel, which they acknowledge was inadvertently sent, is not protected attorney work product, and instead dismiss it as a "little 3-sentence" email which could not possibly be privileged."* The "work product" doctrine does not apply to emails created to be "purely sarcastic in nature" as declared under penalty of perjury by Mr. Martin, ▮. The work product doctrine applies to serious work in anticipation of litigation. See, *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998), a 58 page legal analysis. Mr. Martin has declared he was "sarcastic" in his email. Mr. Martin is aware the burden is upon him to establish privilege exists, and that it has not been waived.[3]

---

[3] The burden of proving each element of the privilege rests upon the party asserting it. See e.g., *Matter of Gavin*, 39 A.D.2d 626, 628 (1972); *Matter of Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 474 (1978). The burden is upon Mr. Martin and Orrick to show the privilege exists, and was not waived. *John Blair Communications, Inc. v Reliance Cap. Group*, L.P., 182 AD2d 578 [1st Dept 1992]); *Manufacturers and Traders Trust Co. v Servotronics,* Inc., 132 AD2d 392 [4th Dept 1987]). [FN7] [*13]. Mr. Martin's voluntary disclosure of the email to third parties waives any privilege. See e.g., *In re Sealed Case*, 877 F.2d 976, 980-81 (D.C. Cir. 1989), *S.E.C. v. Cassano*, 189 F.R.D. 83 (S.D.N.Y. 1999), *United States v. Gangi*, 1 F. Supp.2d, 256, 263 (S.D.N.Y. 1998); *FDIC v. Singh*, 140 F.R.D. 252, 253 (D. Me. 1992). The email was also sent by Mr. Martin outside the scope of the attorney-client relationship. See e.g., *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

11

Mr. Martin states that under Rule 502 of the Federal Rules of Evidence, to conclusively establish that work-product protection was not waived, he needs to show that: "(1) the disclosure [was] inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." *Fuller v. Interview, Inc.*, 07-cv-5728, 2009 WL 3241542, at *3-7 (S.D.N.Y.Sept. 30, 2009).

But here clearly Mr. Martin cannot meet the second prong of Rule 502, and he <u>cannot show that he took reasonable steps to prevent disclosure after the first inadvertent email of April 29, 2014</u>.  Indeed, it is precisely because of Mr. Martin's failure to take reasonable precautions, that resulted in the second inadvertent email of May 22, 2014.  Therefore Mr. Martin, who claims to be holder of the privilege, failed to take reasonable steps to prevent subsequent disclosure after sending out the first inadvertent email.  Mr. Martin should have immediately fixed the settings on April 29, 2014, because he realized there was a fault with his iPad or computer after the first inadvertent email of April 29, 2014.  Mr. Martin only decided to fix and change the settings after the second inadvertent email of May 22, 2014.

Mr. Martin's conduct is designed primarily to prolong the matter, and cause delay and expense, and maliciously injure Plaintiffs, no matter what frivolous legal position he takes on behalf of KBC, and no matter the number of false statements he submits to Court.

Mr. Martin presents inconsistent arguments.  On the one hand, Mr. Martin argues the email of May 22, 2014, is privileged "work product", and he needs to protect his conclusions – and on the other hand, he argues the email is "sarcastic" and <u>does not reveal his conclusions</u>, and so, it cannot be "work product", and does not need protection.  Mr. Martin seeks to seal all documents that make reference to his little email to avoid negative publicity for his firm and the risk of injury to his firm's business.  ███████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████, so as to increase the billable hours for his firm.  In *Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 197, 205 (S.D.N.Y. 2007), the Court rejected this kind of considerations as a basis for overcoming the strong presumption of public access to judicial documents.

That Mr. Martin may feel discomfort at the May 22, 2014, email being on the public record is insufficient to sustain his Motion to Seal Documents, and is insufficient to deny the public's right to access judicial documents.[4]

---

[4] KBC has also not satisfied the showing of good cause required for a protective order under Fed. R. Civ P. 26(c).  See *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 62, 72 (S.D.N.Y. 2007).  Speculative allegations of harm are insufficient, and here, no "particular" "clearly defined" "specific and serious injury" has been argued by KBC to justify a protective order. Orrick claims that because the email is *inadvertent* it is thus privileged – but that is not true, and a *non sequitur*.  The email is not privileged and Mr. Martin waived any privilege.

13

The reason for this litigation is that KBC has failed to pay the irrevocable Bank checks, and has failed to honor her obligations to return Plaintiffs' monies, and KBC has failed to comply with New York law and public policy and violated the statutory duties as to a Payor bank under the NY Uniform Commercial Code. The Antwerp Diamond Bank ("ADB") has dropped out of the appeal and the ADB forum clause has dropped out. ADB moved to be dismissed from the appeal.

Plaintiffs' claims on appeal relate to the KBC only and arise out of KBC's operative facts such as: (a) KBC Bank made final payment of the Dollar Check $35,110.72USD into the account of Midamines Sprl Ltd., and then KBC reversed the payment and took the money out of Midamines' account without authorization, some two weeks after final payment, and (b) KBC failed to pay the Euro check of 56,414.73 Euro, and failed to act in a timely manner on the item, and went beyond the midnight deadline, and failed to return the Euro check.

The New York Rules of Professional Conduct, Rule 4.4, only imposes a minimal burden of notification on the attorney receiving an inadvertent email, and Mr. Martin and Orrick were notified. New York Rules of Professional Conduct, Rule 4.4., allows Plaintiffs to read and retain the inadvertent email of May 22, 2014, and requires counsel to use the information to his client's advantage.

Plaintiffs' counsel has an ethical obligation to subordinate the interests of others to those of his client. Counsel's duty of competent representation also

14

necessitates use of the email. Plaintiffs' counsel is not barred from reading, retaining or using the email. New York's Rules of Professional Conduct, Rule 4.4 does not subject counsel to professional discipline for using the email.

Mr. Martin's assertion in his Reply Memorandum (Doc. 100, p. 10) that the email of May 22, 2014 was a "*single, errant email*" violates Rule 11 – and is a patently false statement – and provides additional grounds for the disqualification of Mr. Martin and Orrick.

For the foregoing reasons, Plaintiffs respectfully request the Court to:

A)　Grant the Plaintiffs' Motion for Leave to File a Sur-Reply and to file the supporting Declaration of Hassan Abbas.

Respectfully submitted,

*s/ Hassan A. Abbas*

Hassan A. Abbas
Counsel of Record for Plaintiffs-Appellants
Midamines Sprl Ltd. and Hassan A. Abbas, Esq.
19 Don Carlos Drive
Hanover Park, Illinois 60133
Tel. 630 233 0621 - Fax 630 233 88400
Email: *ha.law@hotmail.be*