# Exhibit 10

_____

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

_____

| | |
|---|---|
| MIDAMINES SPRL LTD.    ) | **Case No. 14-862** |
| Plaintiffs-Appellants     ) | |
| v.                                       ) | On Appeal From the USDC NYSD |
|                                            ) | 12 cv 8089, Hon. Richard J. Sullivan |
| KBC BANK NV               ) | Date of Final Order/Notice of Appeal |
| <u>Defendants-Appellees</u>_____ ) | Filed: March 19, 2014 |

## APPELLANTS' MOTION TO SUPPLEMENT THE RECORD ON APPEAL

Plaintiffs-Appellants, Midamines Sprl Ltd. and Hassan Abbas, by and through counsel, pursuant to Rule 10(e)(3) of the Fed. Rules of Appellate Proc., move to supplement the factual record on appeal, as follows:

1. Mr. Richard Martin's Reply Memorandum (Doc. 100) to the Plaintiffs-Appellants' Opposition (Doc. 74) to his Motion to File His Response Under Seal (Doc. 66) raised new legal issues, and significantly, misrepresented material facts to the Court of Appeals which must be addressed and corrected.

2. Accordingly Plaintiffs-Appellants seek the Court's permission to supplement the record on appeal and file the Declaration of Hassan A. Abbas to address the new issues and to correct the false information which Mr. Martin has supplied to the Court, and to further support the *Motion to Disqualify* Mr. Richard Martin and the firm of Orrick Herrington, Sutcliffe LLP (hereinafter "Orrick")(Doc. 53-1).

1

3.  The Federal Rules of Appellate Procedure, Rule 10 (e) (3) permits the record to be supplemented in order to correct the factual record, particularly when *after* the Plaintiffs have filed their *Motion to Disqualify* (Doc. 53) – comes Mr. Martin in his *Reply Memorandum* (Doc. 100), and presents false statements in a court filing, which provide additional grounds for his and Orrick's disqualification.

4.  If a Court has any doubts over whether to disqualify counsel, it must resolve those facts in favor of disqualification. *Hull v. Celanese Corp.*, 513 F. 2d 568, 571 (2d Cir. 1975). The court further noted:

> "The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount. Recognizably important are Plaintiff's right to counsel of her choice and the consideration of …judicial economy…These considerations must yield, however, to considerations of ethics which run to the very integrity of our judicial process."

5.  Courts have a need to maintain the "highest standards of the profession" *Government of India v. Cook Indus., Inc.*, 569 F.2D 737, 739 (2d Cir. 1978).

6.  The objective of the disqualification rule is to preserve the integrity of the adversary process. *Board of Education of the City of New York v. Nyquist*, 590 F.2d 1246. The integrity of the adversary process has been undermined by Mr. Martin and Orrick.

7.  The courts have "….. not hesitated to disqualify counsel when circumstances warranted it..", *Evans v. Artek Systems Corporation*, 715 F. 2d 788 (2d. Cir. 1983). The circumstances here warrant the disqualification of Mr. Martin and Orrick.

8. Mr. Martin states for the first time in the Reply Memorandum that his email of May 22, 2014 was a "*single, errant email*" – but that is <u>categorically not true</u>. Mr. Martin is not entitled to the final word when submitting a false statement to the court, particularly given the procedural posture of the defendants' pending Motion to File under Seal (Doc. 66) and the Plaintiffs' Motion for Disqualification (Doc. 53) of Mr. Martin and Orrick. It has become necessary to supplement the record.

9. Mr. Martin's Reply Memo dated 7/7/2014, Doc. 100, introduces false facts to the Court of Appeals, in order to mislead the Court, to bolster an argument as to non-waiver, simply to stay on the case, no matter what, and is unethical and unprofessional for an attorney, and the circumstances warrant his disqualification.

10. Mr. Martin has admitted his capacity for sarcasm and repeatedly describes his comments and email as "sarcastic" such as: "*entirely sarcastic*" (Doc. 77, p. 16, Sealed Opposition) and "*I also noted, sarcastically,...*" (Doc. 77, Sealed Decl. Martin, p. 5). Mr. Martin states that he made an "*offhand, sarcastic comment*" (Doc. 77, Sealed Opposition, p. 6) ███████████████████████████████████████. He redacts these comments in his Doc. 122-1.

11. In Doc. 122-1 filed July 15, 2014 Redacted Opposition Mr. Martin states at page 2 Opposition (filed as p. 6 of 25) that: "*Mr. Martin has repeatedly informed Mr. Abbas that the email is privileged, was mistakenly sent, and, in any event,* ***that the comment was sarcastic in nature and should not be taken at face value***."

3

12. Mr. Martin wants the Court to ignore ███████████████ ███████████████████████████ that Plaintiffs' have a valid argument as to *Horvath*, and that he is taking a frivolous position. Mr. Martin wants the Court to disregard his admission: ███████████████████████████ ███████████████████████████ and tells the Court to believe his alleged sarcasm.

13. Mr. Martin takes inconsistent and untenable positions. Firstly, he claims the email is "privileged" and should be protected, and that his comments reflect his strategic impressions and conclusions; but Secondly he informs the Court that: "*..in any event, the comment was <u>sarcastic in nature</u> and <u>should not be taken at face value</u>*". Since Mr. Martin argues his email is in essence mockery and thus does not reflect his conclusions – the "sarcastic" email needs no protection and no sealing.

14. In his Sealed Opposition, Mr. Martin has also used the word "*offhand*" to describe his email which has several definitions including: rude, discourteous, and negligent. Mr. Martin also states he was being "*sarcastic*" defined as: mocking, sardonic, derisive, disdain and disrespectful.

15. On April 29, 2014, Mr. Abbas received the first inadvertent email from Mr. Martin. In this email, Mr. Martin stated in part to his lawyer colleagues at Orrick,

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

12. Mr. Martin apologized for his April 29, 2014 email, as he had been "hoist by his own petard" and carelessness, and he indicated he would forward the proposal to KBC – however Mr. Martin failed to implement any reasonable precautions to prevent subsequent disclosures. Mr. Martin failed to fix the settings on his iPad or his computer in order to prevent future inadvertent emails. It happened again.

13. On May 22, 2014, Mr. Abbas received a second inadvertent email from Mr. Richard Martin of Orrick Herrington Sutcliffe LLP, sent from rmartin@orrick.com to, as follows: habbas@handlerthayer.com, ha.law@hotmail.be, nraj@orrick.com, HGredd@LSWLAW.com, sptlaw@sbcglobal.net, pgarlinger@lswlaw.com. The email was sent to Mr. Abbas, and to lawyers outside the law firm of Orrick, such as Helen Gredd and Patrick Garlinger, and even to Mr. Santo P. Terenzio, an attorney in Illinois, who is not participating as counsel in this case. The email stated:

[redacted]

14. On May 22, 2014, the same day, Mr. Abbas received another email from Mr. Martin which stated: "*Mr. Abbas, I apologize for doing this again.*" Mr. Martin further stated: "*This is apparently a fault in my iPad that I was unaware of*", but Mr. Martin was aware of the existence of a fault in his iPad as of April 29, 2014.

5

15. Mr. Martin was fully aware that his email of May 22, 2014 was his <u>second inadvertent email</u> – <u>but he failed to disclose this material fact to the court</u> in his Reply Memorandum because it shows that he failed to take reasonable precautions after sending out his first inadvertent email, and it shows that the email of May 22, 2014 was not a "*single, errant email*", and it shows that Mr. Martin does not meet the elements of Rule 502, Federal Rules of Evidence, and it shows that Mr. Martin has waived any *alleged* privilege by his voluntary disclosure to third parties of the May 22, 2014 email, and Mr. Martin waived privilege by his failure to take reasonable precautions to prevent inadvertent disclosures.

16. Mr. Martin falsely states in his Reply Memorandum (Doc. 100, p. 10) that:

"*Furthermore, Plaintiffs cannot demonstrate that the mistaken transmission of a single, errant email to Mr. Abbas was the result of a failure to take reasonable precautions on the part of KBC's counsel.*"

Plaintiffs can demonstrate the email of May 22, 2014, was not the "*transmission of a single, errant email*" – but was the second email transmission – and was the result of a failure to take reasonable precautions on the part of KBC's counsel.

17. On May 24, 2014, two days after the second email, Mr. Martin sent Mr. Abbas yet another email which included a statement that: "*I have now fixed the flaw in the setting in my computer which automatically included all recipients to emails which I intended to forward to specific people..*". Mr. Martin's device settings could have been fixed after his first inadvertent email on April 29, 2014.

6

18. Mr. Martin's reply raises new legal issues regarding KBC's alleged "*parent-subsidiary*" relation to ADB. Plaintiffs dispute this proposition because KBC has sold the ADB, toward the end of 2013, to the Yinren Group of China, and the sale of ADB was announced world-wide and mandated by the European Commission (one of KBC's regulators). Mr. Martin is aware of the facts. Yinren was awaiting regulatory approval in several countries, and may have even received such final approval by now. Based on information and belief, Yinren is in control and owns ADB. See e.g., article published on the sale of ADB, District Court Doc. #48-1.[1]

20. Mr. Martin's conclusory assertions of "privilege" or "work product" simply because his email was inadvertently sent is not sufficient to meet his burden of proving privilege, and that it has not been waived. Mr. Martin's assertion that the Plaintiffs discuss CAMP settlement discussions, or that it is necessary – is not true.

---

[1] In its original filing, Orrick contended principally that Mr. Martin did not waive privilege by voluntary disclosure to third parties outside his firm because the email was sent to persons he had an *alleged* "common interest" or "joint defense", but Mr. Terenzio, Esq. in Illinois, to whom the email was sent, is not even participating in the case, and Ms. Gredd and Mr. Garlinger dropped out and no joint brief. In his Reply Memorandum Mr. Martin adds a new argument that there are no "judicial documents" to which the presumption of public access applies, and that Plaintiffs cannot establish a waiver of privilege. However, Mr. Martin is aware that <u>he has the burden</u> of establishing privilege, and he has to establish that it has not been waived. In this situation, Mr. Martin has not met his burden of establishing privilege or that it has not been waived. KBC cannot overcome the strong presumption of public access to judicial documents relevant to the judicial process.

7

21.  Mr. Martin has not overcome the constitutional right attached to documents that "have historically been open to the press and general public" when "public access plays a significant positive role." *Press-Enterprise*, 478 U.S. at 8; *Lugosch*, 435 F.3d at 120. [2]

22.  The Courts in this circuit have consistently recognized there is a strong presumption of public access to documents filed with the court that are relevant to the performance of the judicial function.[3] Mr. Martin's ███████████████, his declared sarcasm in his email of May 22, 2014, and pursuit of frivolous legal positions, his misrepresentations of fact in Court filings, such as his Reply Memo, are relevant judicial documents, and show the lack of credibility of Mr. Martin, and show his contempt for court, and all of which justify his disqualification.

---

[2] KBC's motion for sealing documents does not comport with the constitutional standards set forth in *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1 (1986), protecting the public's right to access judicial documents. The public enjoys a qualified First Amendment right of access to judicial documents. *See Press-Enterprise*, 478 U.S. at 8-9 (setting standard for invocation of First Amendment right); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (common law and constitutional rights of access to judicial documents apply in civil case).

[3] In order to determine whether a document is a judicial document entitled to the presumption of public access the Court must evaluate whether the document is relevant to the performance of the judicial function and useful in the judicial process. *United States v. Amadeo*, 44 F.3d 141, 145-46 (2d Cir. 1995)("We think that the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document.").

23. Mr. Martin has supplied declarations in this appeal stating that his email of May 22, 2014 was *"purely sarcastic in nature"*, see e.g., Sealed Declaration of Richard Martin, June 23, 2014, page 6, ¶12. Mr. Martin's alleged sarcasm is not a higher value to be preserved or sealed. The Court need not seal, nor tailor, nor make redactions of documents as proposed by Mr. Martin. His motion to seal does not overcome the public's right to access to judicial documents.[4] Unfortunately, Mr. Martin has lied to the Court about the "single errant email", simply to win an argument as to non-waiver, which he cannot prevail on, and should be disqualified.

24. Mr. Martin wants the Court  but in fact Mr. Martin's opposition to motion to disqualify,

---

[4] We are not in discovery under Rule 26(b)(3), and to qualify as work product the document must be ("[A] document created because of anticipated litigation, which tends to reveal mental impressions, conclusions, opinions or theories concerning the litigation". *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998). Here the email does not qualify as work product because (a) Mr. Martin declares, and if it is believed, his email was created and intended to be *"purely sarcastic in nature"* and thus Mr. Martin argues the email does not reveal his conclusions ▮▮▮▮▮, so it cannot be "work product", and, (b) by his very own admission Mr. Martin intended to make "sarcastic" comments mocking of Plaintiff's counsel, and so his email was not "in anticipation of litigation", and, (c) also here Mr. Martin has waived any alleged "privilege" by voluntary disclosure to third parties outside his law firm, such as Mr. Santo P. Terenzio, Esq., an attorney in Illinois, with whom Mr. Martin has absolutely no joint defense agreement, and none exist with ADB at present in the appeal, as ADB has dropped out and the forum clause has dropped out, and (d) significantly it was the <u>second inadvertent email</u> – thus showing Mr. Martin's negligence and failure to take any reasonable precautions to prevent the repeated disclosure and inadvertent emails.

9

and his motion to seal, and reply and his repeated false statements and his pursuit of a frivolous legal position on behalf of KBC undermine the integrity of the adversary process and are a mockery of the judicial system.[5]

25. Mr. Martin states that under Rule 502 of the Federal Rules of Evidence, to conclusively establish that work-product protection was not waived, he needs to show that: "(1) the disclosure [was] inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." *Fuller v. Interview, Inc.*, 07-cv-5728, 2009 WL 3241542, at *3-7 (S.D.N.Y.Sept. 30, 2009).

---

[5] Mr. Martin takes inconsistent and frivolous positions. On the one hand, Mr. Martin unilaterally claims that his email is privileged "work product" and must be sealed to protect his strategic conclusions, and on the other hand he claims his email is "entirely sarcastic in nature" and does not reveal his conclusions and does ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mr. Martin attempts to shift the burden of proof in his Reply (Doc. 100) in stating that: "*Plaintiffs fail to explain why the communication from KBC's counsel, which they acknowledge was inadvertently sent, is not protected attorney work product, and instead dismiss it as a "little 3-sentence" email which could not possibly be privileged.*" The "work product" doctrine does not apply to emails created to be "purely sarcastic in nature" as declared by Mr. Martin, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The work product doctrine applies to work in anticipation of litigation, such as in *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998), a 58 page legal analysis. Mr. Martin declared he was "sarcastic" in his email. Mr. Martin is aware the burden is upon him to establish privilege exists, and that it has not been waived – but here it has been waived by voluntary disclosure to third parties outside his firm due to lack of diligence and carelessness.

26. Mr. Martin cannot mislead the Court, and cannot meet the second prong of Rule 502 and he cannot show that he took reasonable steps to prevent disclosure after the first inadvertent email of April 29, 2014. Indeed, it is precisely because of Mr. Martin's failure to take reasonable precautions, failure to fix the settings in his devices, that resulted in the second inadvertent email of May 22, 2014.[6]

27. Therefore Mr. Martin, who claims to be holder of the privilege, failed to take reasonable steps to prevent subsequent disclosure after sending his first inadvertent email. Mr. Martin should have immediately fixed the settings on April 29, 2014, because he realized there was a fault with his iPad and/or computer after the first inadvertent email of April 29, 2014. Mr. Martin only decided to fix and change the settings after the second inadvertent email of May 22, 2014.

---

[6] The burden of proving each element of the privilege rests upon the party asserting it. See e.g., *Matter of Gavin*, 39 A.D.2d 626, 628 (1972); *Matter of Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 474 (1978). The burden is upon Mr. Martin and Orrick to show the privilege exists, and was not waived. *John Blair Communications, Inc. v Reliance Cap. Group*, L.P., 182 AD2d 578 [1st Dept 1992]); *Manufacturers and Traders Trust Co. v Servotronics,* Inc., 132 AD2d 392 [4th Dept 1987]). [FN7] [*13]. Mr. Martin's voluntary disclosure of the email to third parties waives any privilege. See e.g., *In re Sealed Case*, 877 F.2d 976, 980-81 (D.C. Cir. 1989), *S.E.C. v. Cassano*, 189 F.R.D. 83 (S.D.N.Y. 1999), *United States v. Gangi*, 1 F. Supp.2d, 256, 263 (S.D.N.Y. 1998); *FDIC v. Singh*, 140 F.R.D. 252, 253 (D. Me. 1992). The email was also sent by Mr. Martin outside the scope of the attorney-client relationship. See e.g., *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

28. Mr. Martin's assertion in his Reply Memorandum (Doc. 100, p. 10) that the email of May 22, 2014 was a "*single, errant email*" also violates Rule 11 – and is a patently false statement – and provides additional grounds for the disqualification of Mr. Martin and Orrick. Mr. Martin should be subject to contempt of court because of his misrepresentations to the Court of Appeals which disrespects and impedes the Court in performing its judicial function of rendering justice.

29. Mr. Abbas does not disclose the CAMP Mediation settlement discussions, contrary to the misleading statements in the Declaration of Mr. Martin on June 23, 2014, at ¶7. Mr. Abbas discusses matters in the public record, like the District court's order and the *Horvath* case, and the Declarations of Mr. Martin, see, Doc. #30 - SDNY, and Doc. #66-2 in the 2nd Cir. Mr. Abbas discusses the Declaration of Joost Verlinden, KBC's legal expert, who concedes that KBC Bank is not a party to any so called "injunction" – and concedes any prior Antwerp decision as to ADB does not impose obligations on the KBC, as Payor bank. KBC has no reason not to pay the Bank checks, as Orrick knows, and ADB also is released from any injunction. Declaration of Joost Verlinden, District Court Doc. #34, SDNY, at p. 7, ¶18, and same, Decl. Verlinden, at p. 10, ¶¶31-32.[7]

---

[7] Mr. Van Huysse's declaration, Doc. 122-2, p. 36, is irrelevant now because he is the manager of ADB, which has dropped out and the ADB forum clause is out. Mr. Van Huysse's declaration contained some false statements which were addressed by Mr. Zoumis, Doc. 36, and Mr. Abbas, Doc. 37, declarations in the district court.

30.   Also Mr. Martin knows that he cannot reveal CAMP mediation settlement discussions so that cannot be the real reason for his desire to seal his email, and contrary to his assertions, Plaintiffs have not disclosed CAMP mediation. Mr. Martin who represents *only KBC* is still attempting to "piggy back" on ADB, by submitting a declaration not from his client KBC, but from ADB. Also KBC and ADB and their counsel have ignored the order of the Kinshasa Court of Appeals.[8]

---

[8] Mr. Martin attaches a declaration of Mr. Vanhuysse, manager of ADB, who concedes that the Antwerp injunction has expired – and so there is no justification for KBC not to pay the Bank checks and no reason to continue to withhold Plaintiffs' funds. See Doc. 122-2, p. 46, ¶37. Mr. Vanhuysse states he received what he *believes* is a Congolose order from March 2013 which invalidates the February 15 Partners Meeting and he *concludes* the Bank checks were improperly issued, but his own conclusions are irrelevant and faulty, because KBC has an obligation to pay the Bank checks as Payor Bank under NY UCC; and Vanhuysse admits that the Bank checks are drawn on KBC New York and KBC Brussels, and admits that Mr. Abbas is the valid proxy holder on the Midamines Congo account and the checks were legally issued, and ADB itself proposed payment by Bank checks. Doc. 122-2, p. 41, ¶20. Mr. Vanhuysse admits that he is not in a position to question the validity of the supporting documents, (Doc. 122-2 at ¶22), which confirm Mr. Abbas as legal director and Mr. Zoumis as CEO of Midamines Congo, i.e. the *Official Journal of the Democratic Republic of Congo* which was ignored by Mr. Martin and KBC, and Ms. Gredd, and Mr. Vanhuysse and ADB, and they **have also ignored the order of the Kinshasa Court of Appeals** dated March 19, 2013, which suspended, froze and prevents the execution anywhere in the world of the prior lower court Congo order mentioned by Vanhuysse; and shows the Annual Shareholders Feb 15 Meeting was valid, and the Bank checks must be honored and paid.  This order of the Kinshasa Court of Appeals was provided to KBC and to Mr. Martin, and to Ms. Gredd and to ADB on May 22, 2014.   Mr. Martin's response on May 22, 2014 ███████████████████████████████████████.

31. Mr. Martin seeks to seal all documents that make reference to his email to avoid negative publicity for his firm and risk of injury to his firm's business. In *Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 197, 205 (SDNY 2007), the Court rejected these considerations as a basis for overcoming the strong presumption of public access to judicial documents. ▮▮▮▮▮, to prolong the case and increase the billable hours for his firm. There is bad faith by KBC and its counsel.

32. The N.Y. Rules of Professional Conduct, Rule 4.4, only imposes a minimal burden of notification on the attorney receiving an inadvertent email, and Mr. Martin and Orrick were notified.

33. Moreover, New York Rules of Professional Conduct, Rule 4.4., allows the Plaintiffs to use the inadvertent email of May 22, 2014, and allows counsel to use the information to his client's advantage. Plaintiffs' counsel has ethical obligations to subordinate the interests of others to those of his client, and as part of counsel's primary duty of competent representation is required make use of the email.

34. Plaintiffs' counsel is not barred from reading or retaining or using the email, and Rule 4.4 does not subject counsel to professional discipline for using the email. Plaintiffs' counsel is entitled and required to use this May 22 email in the Motion

to Disqualify, and other judicial documents, and in the Initial Appellant's Brief. Mr. Martin and KBC cannot bar the Plaintiffs' legitimate use of the email.

35. KBC's request for costs and fees for Plaintiffs' use of the email in a motion to disqualify Mr. Martin and Orrick is frivolous and unwarranted. NY Rule 4.4, and the law, permits and requires the use of the email under these circumstances.

36. KBC's costs and fees resulted from the conduct of KBC's chosen counsel, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌, negligence in sending repeated inadvertent emails, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌, and misleading the Court. KBC should pursue her own counsel for malpractice.

37. KBC will not be prejudiced by the disqualification of Mr. Martin and Orrick, as Mr. Martin's position is contrary to his own client KBC. Also, if Mr. Martin remains as KBC's counsel, his comments can be used by Plaintiffs' counsel in motions, briefs, and oral argument, under the NY Rules of Professional Conduct, Rule 4.4., and because Mr. Martin waived any "privilege" by voluntary disclosure to third parties outside his firm, and because of his repeated inadvertent emails, which demonstrate a lack of concern for privilege, and a failure to take reasonable precautions to prevent inadvertent disclosures.

38. Mr. Martin would be acting in bad faith, and would be pursuing a frivolous legal position which he does not believe in, and he would violate Rule 11 ▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌.

39. ███████████████ ███████████████████████████████████████████████

███████████████████████████████████████████████the district court erred in applying *Horvath* which is distinct and inapplicable for the dismissal of KBC, and so the KBC should not have been lumped together under one clause with ADB which has dropped out and the forum clause has dropped out.

40. Mr. Martin argues the court must ignore the plain and ordinary meaning of his words because he has declared he was being purely sarcastic in his email and ███████████████████████. This is an insincere and disingenuous argument.

41. Absent the requested relief of disqualification, these proceedings will be further tainted by Mr. Martin's false statements, sarcasm, contempt of court, and mockery of counsel and the judicial system.  In this situation, any doubts as to Mr. Martin's conduct and statements, must be resolved in favor of disqualification. *Hull v. Celanese Corp.*, 513 F. 2d 568, 571 (2d Cir. 1975).

42. KBC can find alternative counsel and file a responsive brief by September 17, 2014.  If new counsel is appointed for KBC, such new counsel can obtain an extension of time if necessary to respond to the Initial Appellants' Brief, and such a request would be accepted by the Plaintiffs-Appellants.  Thus KBC would not be prejudiced.

For the foregoing reasons Plaintiff-Appellants respectfully request the Court to supplement the record with Plaintiffs' filing of the Declaration of Hassan Abbas in support of the Motion to Disqualify.

Respectfully submitted,

*s/ Hassan A. Abbas*

Hassan A. Abbas
Counsel of Record for Plaintiffs-Appellants
Midamines Sprl Ltd. and Hassan A. Abbas, Esq.
19 Don Carlos Drive
Hanover Park, Illinois 60133
Tel. 630 233 0621 - Fax 630 233 88400
Email: *ha.law@hotmail.be*