# Exhibit 11

_____

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

_____

| | | |
|---|---|---|
| MIDAMINES SPRL LTD. | ) | **Case No. 14-862** |
| Plaintiffs-Appellants | ) | |
| v. | ) | On Appeal From the USDC NYSD |
| | ) | 12 cv 8089, Hon. Richard J. Sullivan |
| KBC BANK NV | ) | Date of Final Order/Notice of Appeal |
| <u>Defendants-Appellees</u> | ) | Filed: March 19, 2014 |

## <u>DECLARATION OF HASSAN ABBAS IN SUPPORT OF MOTION TO DISQUALIFY RICHARD MARTIN AND THE FIRM OF ORRICK</u>

I, HASSAN ABBAS, pursuant to §28 U.S.C. § 1746, declare as follows:

1. I am an Illinois attorney and president and counsel for Midamines Sprl Ltd.,

an Illinois corporation. Moreover, I am the legal director of Midamines Sprl, a

Congolese corporation. In addition, I am the valid proxy holder and authorized

signatory on the Midamines Sprl bank accounts. ADB and KBC have no authority

to disregard my wire transfer and payment instructions.

2. Plaintiffs-Appellants bring this appeal against KBC Bank only, and are

seeking the payment of their money in the amount of $35,110.72USD and

56,414.73Euro. Plaintiffs are the holders in due course of two valid and

irrevocable Bank checks drawn on KBC Bank - which the KBC failed to pay.

3. I have personal knowledge of the facts contained herein and would be

competent to testify thereto.  I make this declaration is support of the Motion to Disqualify (Doc. 53-1) KBC's counsel, Mr. Richard Martin, and firm of Orrick, Herrington, Sutcliffe, submitted to the substantive motion calendar July 15, 2014.

4.    On April 29, 2014, I received the first inadvertent email from Mr. Martin. In his first carelessly sent email, Mr. Martin stated in part to his colleagues at Orrick, ███████████████████████████████████████  ████████

████████████████████████████████████████████

██████████████████████████████████

5.    Mr. Martin apologized for his April 29, 2014 email and indicated he would forward the proposal to KBC – but Mr. Martin failed to implement any reasonable precautions to prevent subsequent disclosures, and Mr. Martin failed to fix the settings on his i-Pad or computer to prevent future inadvertent emails.  Then it happened again on May 22, 2014.

6.    On May 22, 2014, I received a second inadvertent email from Mr. Richard Martin of Orrick Herrington Sutcliffe LLP, sent from rmartin@orrick.com to the following:  habbas@handlerthayer.com,  ha.law@hotmail.be,  nraj@orrick.com, HGredd@LSWLAW.com, sptlaw@sbcglobal.net, pgarlinger@lswlaw.com.  The email was sent to me, and lawyers outside the Orrick firm, such as Ms. Gredd and Mr. Garlinger, and to Mr. Santo Terenzio, an Illinois attorney, not participating as counsel in this case.  Mr. Martin fails to disclose he sent the email to Mr. Terenzio.

2

7.       Mr. Martin's email of May 22, 2014 stated:



8.       On May 22, 2014, the same day, I received another email from Mr. Martin which stated: "*Mr. Abbas, I apologize for doing this again.*"  Mr. Martin further stated: "*This is apparently a fault in my i-Pad that I was unaware of*", but Mr. Martin was aware of the existence of a fault in his iPad as of April 29, 2014.

9.       Mr. Martin was also aware that his email of May 22, 2014 was his <u>second</u> inadvertent email – but he failed to disclose this material fact to the court in his reply memorandum (Doc. 100) because it shows that he failed to take reasonable precautions on April 29, 2014, after sending out his first inadvertent email.

10.      Mr. Martin falsely states in his Reply Memorandum (Doc. 100, at p. 10) that:

"*Furthermore, Plaintiffs cannot demonstrate that the mistaken transmission of a single, errant email to Mr. Abbas was the result of a failure to take reasonable precautions on the part of KBC's counsel.*"

Plaintiffs can demonstrate the email of May 22, 2014, was not the "*transmission of a single, errant email*" – but was the second email transmission – and was the result of a failure to take reasonable precautions on the part of KBC's counsel.

3

11.     On May 24, 2014, Mr. Martin sent me yet another email claiming that his comments in the May 22, 2014 email were "*sarcastic*" and that "*I have now fixed the flaw in the setting in my computer which automatically included all recipients to emails which I intended to forward to specific people..*".  Mr. Martin's device settings could have been fixed after his first inadvertent email on April 29, 2014.

12.     I consulted the New York Rules of Professional Conduct, Rule 4.4, relative to inadvertent emails which states the attorney receiving an inadvertent email has only a minimal burden of notification, and as such, I did notify Mr. Martin and Orrick that I had received the second inadvertent email of May 22, 2014.

13.     I reviewed the Comments to New York Rule 4.4, which state in relevant part, at: [1] responsibility to a client requires the lawyer to subordinate the interests of others to those of his client, and at [2] counsel is not required to refrain from reading or refrain from continuing to read the document.., and at [3] there are circumstances where a lawyer's ethical obligation should not bar use of an inadvertently sent document,.. and that an attorney receiving an inadvertent email is <u>not</u> subject to professional discipline for reading or using that information.

14.     As such I am not barred from reading or keeping or using that information from Mr. Martin's, May 22, 2014, email, and New York Rule 4.4 also states that as counsel I may exercise my professional judgment as to the matter at hand.

15.     On May 22, 2014, I provided to KBC's counsel Mr. Martin, and to ADB's counsel, Ms. Gredd, officially published documents, such as the *Official Journal of the Democratic Republic of Congo*, which show that I have full authority as legal director of Midamines Sprl to give ADB and KBC wire payment instructions as to our funds, which have been withheld for no legitimate reason by KBC New York and KBC Brussels for two years.

16.     Mr. Martin and Ms. Gredd ignored these officially published documents. The KBC and ADB bank managers also ignored the documents, even though, Mr. Peter Vanhuysse, ADB bank manager, knows these are legally binding official documents which he declared he is not in a position to question the validity, and which he previously relied on, and which he stated repeatedly in letters is what he relies on is the Official Journal of the Democratic Republic of Congo.

17.     On May 22, 2014, I  also provided Mr. Martin and Ms. Gredd an order from the <u>Kinshasa Court of Appeals</u> dated March 19, 2013 which suspended, froze, and prevented the execution anywhere in the world of an irrelevant prior lower court Congolese order, which Mr. Martin mentions in his declaration in the district court, Doc. #30 – NYSD, and which Mr. Vanhuysse mentions in his declaration in the district court, Doc. #27, District Court, refiled as  Doc. 122-2, 2nd Cir.

18.    I advised Mr. Martin and Ms. Gredd to forward the settlement proposal and

official documents to the bank managers at KBC and ADB because there is no

reason not to pay the Bank checks.

19.    The KBC and ADB bank managers also ignored the documents and ignored

the order of the Kinshasa Court of Appeals dated March 19, 2013.  This order

prevents execution of prior lower court orders.  This also confirms that I  remain to

this date as the legal director of Midamines Sprl Congo pursuant to the Annual

Shareholders Meeting of February 15, 2012, and I am the proxy holder authorized

on the Midamines accounts to give wire instructions.  The *Official Journal of the*

*Democratic Republic of Congo* has not been changed and remains valid today.

20.    Mr. Martin in his email of May 22, 2014 starts with, ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████.

21.    I instructed Mr. Martin and the KBC bank to follow the law and to make

payment of Plaintiffs' monies and provided the account numbers to forward to

KBC.  Mr. Martin and KBC failed to follow my wire transfer instructions.

22.    I received the Bank checks as payment of my legal fees and I started this

litigation because KBC has failed to pay the irrevocable Bank checks despite her

legal obligation and despite KBC's recognition there is no injunction to payment of

the Bank checks, and there is no impediment, and no reason for non-payment.

23.    I deposited the Bank checks for payment in New York, to the accounts of

my company Midamines Sprl Ltd., at the PNC and Citibank on Madison Avenue.

KBC failed to honor her obligations to pay and failed to return Plaintiffs' monies.

KBC failed to comply with the New York law and public policy and violated the

statutory duties as to a Payor bank under the NY Uniform Commercial Code.

24.    The Antwerp Diamond Bank ("ADB") has dropped out of the appeal and the

ADB forum clause has dropped out.  ADB moved to be dismissed from the appeal.

25.    Our claims on appeal relate to KBC only, and arise out of KBC's conduct

and facts: (a) KBC made final payment of the Dollar Check $35,110.72USD into

the account of Midamines Sprl Ltd., and then KBC reversed the payment and took

the money out of Midamines' account without authorization some two weeks after

final payment, and (b) KBC failed to pay the 56,414.73 Euro, and failed to act in a

timely manner, beyond the midnight deadline, and failed to return the Euro check.

26.    Mr. Martin states in his reply that a "parent-subsidiary" relationship "exists

here between KBC and ADB" (See Reply Memo, Doc. 100, p. 7) but Mr. Martin

fails to disclose to the Court that ADB has been sold to the Yinren Group.

27.    Based on information and belief, Yinren Group now controls and owns ADB

(See District Court Doc. #48-1).  Mr. Martin knows that KBC's sale of Antwerp

Diamond Bank ("ADB") was mandated by the European Commission (one of

KBC's regulators). Yinren Group is awaiting regulatory approval or may have already received by now final approval for its acquisition of ADB.

28.     I did not disclose the CAMP Mediation settlement discussions contrary to the misleading statements in the Declaration of Mr. Martin on June 23, 2014, Doc. 122-2, p 4 at ¶7.  No such disclosure is necessary. Mr. Martin need not disclose.

29.     I discuss matters in the public record, like the District court's order and the *Horvath* case, and the Declarations of Mr. Martin, see, Doc. #30 - SDNY, and Doc. #66-2 in the 2nd Cir., and  I discuss the Declaration of Joost Verlinden, KBC's legal expert, who concedes that KBC Bank is not a party to any so called "injunction" – and Mr. Verlinden concedes any prior Antwerp decision as to ADB does not impose obligations on the KBC, as Payor bank.  KBC has no reason not to pay the Bank checks, as Orrick knows, and ADB also has been released from any injunction.  *See* Declaration of Joost Verlinden, District Court Doc. #34, SDNY, at Page 7, ¶18,  and same, Decl. Verlinden Doc. #34 SDNY, at Page 10, ¶¶31-32.

30.     I discuss the declaration of Mr. Peter Vanhuysse which is in the public record, and which Mr. Martin attaches as a declaration.  Mr. Vanhuysse manager of ADB, concedes that the Antwerp injunction has expired – and so there is no justification for KBC not to pay the Bank checks and no reason to continue to withhold Plaintiffs' funds. See Doc. 122-2, p. 46, ¶37.

31.     Mr. Vanhuysse states he received what he *believes* is a Congolose order from March 2013 which invalidates the February 15 Partners Meeting and he *concludes* the Bank checks were improperly issued, but his own conclusions are irrelevant, inconsistent and faulty, because Mr. Vanhuysse admits that Mr. Abbas is the valid proxy holder on the Midamines Congo account and the checks are valid and were legally issued, and ADB itself proposed payment by Bank checks.  Doc. 122-2, p. 41, ¶20.

32.     Also, I advised Mr. Martin that KBC has an obligation to pay the Bank checks as Payor Bank under NY UCC, and Mr. Vanhuysse admits that the Bank checks are drawn on KBC New York and KBC Brussels, and Mr. Vanhuysse admits that he is not in a position to question the validity of the supporting documents, (Doc. 122-2 at ¶22), which confirm Mr. Abbas as legal director and Mr. Zoumis as CEO of Midamines Congo, i.e. the *Official Journal of the Democratic Republic of Congo* which was ignored by Mr. Martin and KBC, and Ms. Gredd, and Mr. Vanhuysse and ADB.

33.     Mr. Martin and KBC, and Ms. Gredd, and Mr. Vanhuysse and ADB have also ignored the order of the <u>Kinshasa Court of Appeals</u> dated March 19, 2013, which suspended, froze and prevents the execution anywhere in the world of the prior lower court order mentioned by Mr. Vanhuysse, and shows the Annual Shareholders Feb 15 Meeting remains valid and the Bank checks must be paid.

34.     The order of the <u>Kinshasa Court of Appeals</u>, and *Official Journal of the*
*Democratic Republic of Congo*, was provided to KBC and to Mr. Martin, and to
Ms. Gredd and to ADB, on May 22, 2014.  Mr. Martin's response on May 22,
2014, ██████████████████████████████████████

35.     On May 22, 2014, I presented valid arguments to Mr. Martin that the case
*Horvath v. Banco Comercial Portugues, S.A.,* 461 F. App'x 61, 63(2d Circ. 2012)
relied on by the district court was distinct, and inapplicable to KBC, and the that
the district court had erred in dismissing KBC, and had erred in lumping together
two banks under one ADB clause, which does not apply to KBC – and also which
has dropped out of the appeal ██████████████████████████

██████████████████████████████████████████

36.     The email sent by Mr. Martin on May 22, 2014, was not an isolated event,
and therefore Mr. Martin has misled the court in his Reply Memo (Doc. 100) by
stating it was a "*single, errant email*" and pretending that it was an isolated event.

37.     As counsel for Midamines Sprl Ltd., I am required under New York Rules of
Professional Conduct, Rule 4.4, to subordinate the interests of others, such as KBC
and Orrick, to those of my client.  I would be remiss in my duty of competent
representation, and I would also be remiss in my ethical obligation to my client, if I
did not use Mr. Martin's email of May 22, 2014, accordingly, as is proper and
permitted under the New York Rules of Professional Conduct, Rule 4.4.

I declare under penalty of perjury that the foregoing is true and correct.

      DATED:     July 16, 2014

*s/ Hassan Abbas*

**HASSAN ABBAS**